UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JOSEPH EDWARD HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18CV76 RLW |
| | ) |
| ANDREW M. SAUL, Commissioner | ) |
| of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the applications of Joseph Edward Hayes ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF No. 20) and Defendant has filed a brief in support of the Answer (ECF No. 27).

**I. Procedural History**

Plaintiff filed his applications for DIB under Title II of the Social Security Act and for SSI under Title XVI of the Act in 2005. (Tr. 385-95) He was found disabled due to mental impairments on March 27, 2006. (Tr. 16) In March 2103, the agency assessed his eligibility for

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

continued disability and determined his disability had ceased. (Tr. 193-200) In a decision dated April 28, 2014, an administrative law judge ("ALJ") found Plaintiff's disability ended on March 15, 2013, and Plaintiff had not become disabled again since that date. (Tr. 141-152) Plaintiff filed a subsequent disability application in August 2014, and the agency found him disabled in a favorable determination made in January 2015. (Tr. 160-71, 178-79)

However, on December 14, 2015, the Appeals Counsel vacated the April 2014 decision by the ALJ, reopened the January 2015 favorable determination, and remanded the case to a new ALJ. (Tr. 172-81) On July 28, 2017, following an administrative hearing, the new ALJ found Plaintiff's disability ended on March 15, 2013, and Plaintiff had not become disabled again since that date. (Tr. 13-28, 106-21) On March 12, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-6) Thus, the July 28, 2017 decision by the ALJ decision stands as the final decision of the Commissioner.

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues the ALJ erred in failing to give proper weight to the opinion of Plaintiff's consultative examining physician, Dr. Shawn Guiling.

For the reasons that follow, the Commissioner's final decision is supported by substantial evidence on the record as a whole, and the Court affirms the decision.

## II. Medical Records and Other Evidence before the ALJ

During the hearing, counsel for Plaintiff stated Plaintiff had been receiving benefits since January 2015. Plaintiff sought benefits only for the closed period between April 2013 and January 2015. Counsel also stated Plaintiff was diagnosed with borderline intellectual functioning and mild mental retardation. He had social anxiety and speech issues. Plaintiff

2

attempted to work at pizza hut but could not deliver pizzas without getting lost or follow simple instructions to make pizzas. He was able to accomplish dish washing, but he had trouble stacking plates and doing several things at once. (Tr. 110-19) Plaintiff's doctor indicated Plaintiff had a tendency to shut down if he was performing activities wrong. (Tr. 119)

Plaintiff completed a Function Report – Adult on April 26, 2012. He reported practicing MMA workout cardio, visiting his brother, hanging out with friends, driving his car, cleaning his trailer, doing laundry, skateboarding, doing kickboxing, cleaning his car, listening to music, preparing microwaved meals and sandwiches, mowing the yard, and shopping for clothes and food. He did not need reminders to go places, and he had no problems getting along with others. Plaintiff could pay attention for a long time. He reported he could follow written and instructions "good" and spoken instructions "fine." He was able to get along with authority figures "just fine." Plaintiff further stated he handled stress and changes in routine "pretty well." (Tr. 521-31)

In a Disability Report dated December 11, 2014, Plaintiff listed his mental conditions limiting his ability to work as bipolar, depression, schizophrenia, and anxiety disorder. (Tr. 591) In a Function Report – Adult, Plaintiff stated he had a short temper and hated being around people or being in public. He was able to prepare sandwiches or food in the microwave. He did no housework or yard work. Plaintiff did not go out much, and he could not go out alone because he did not like being without his woman. Plaintiff's woman did the shopping. Plaintiff watched TV during the day, and he participated in no social activities. He opined his conditions affected his ability to talk and get along with others. Plaintiff stated his ability to follow instructions depended on what they were for. He did not get along with others or handle stress.

3

Plaintiff stated he was not so much mentally retarded as he had problems working in public. He became anxious and froze up. (Tr. 605-12)

In 2006, Dr. K.P.S. Kamath performed a disability evaluation. Dr. Kamath noted Plaintiff, who was 19 years old at the time, had a mood disorder, which was difficult to assess due to mental retardation. Plaintiff had poor ability to relate to other people, with some degree of social isolation. He could comprehend and follow instructions but chose not to, and he could perform simple repetitive tasks. Plaintiff had poor ability to cope with stress and pressures of routine work activity, and he was unable to comprehend and follow basic personal and financial affairs. Dr. Kamath diagnosed mood disorder NOS, mental retardation, and history of head injury 3 years ago. (Tr. 996-98)

More recently, Paul W. Rexroat, Ph.D., completed a consultative psychological evaluation on May 23, 2012 and submitted a report. Dr. Rexroat noted Plaintiff was socially confident and comfortable in his interactions. His attitude was appropriate with good interest and effort. Plaintiff displayed no unusual or bizarre behaviors. Testing revealed a full scale IQ of 75, which was in the borderline range of intelligence. Mental status examination was normal with a normal range of emotional responsiveness and affect. He was alert and cooperative with normal, coherent, relevant speech and no flight of ideas or other abnormalities of speech that would indicate the possible presence of a thought disorder. Dr. Rexroat opined Plaintiff was able to understand and remember simple instructions, and he could sustain concentration and persistence with simple tasks. Plaintiff had mild limitations in his abilities to interact socially and adapt to his environment. With respect to daily activities, Plaintiff was able to clean the house, drive his own car after passing the written test on his sixth try, grocery shop, prepare meals, do laundry, and watch TV. Dr. Rexroat found mild limitations in this area. Plaintiff also

4

had mild limitations in his social functioning abilities, as he had friends, saw family members most days, and was able to get along with others despite a preference to stay by himself. Dr. Rexroat noted Plaintiff's ability to sustain concentration, persistence, and pace during the exam. However, due to his borderline range, he had moderate limitations in his ability to remember previously learned information or learn new information. Dr. Rexroat diagnosed borderline intelligence and occupational problems. (Tr. 1024-1030)

Plaintiff returned to Dr. Rexroat on February 13, 2013 for a psychological evaluation at the request of Disability Determinations. Plaintiff's presenting problem was listed as brain damage. Plaintiff reported he never had treatment from a mental health professional on an outpatient basis. Mental status examination was normal. Plaintiff reported occasional mood swings but no anxiety. He thought he was depressed and reported being angry but not irritable. He had adequate energy and exercises a lot. He avoided being around other people but was not suicidal or homicidal. Plaintiff reported no paranoia, hallucinations, or delusions. However, he had trouble sleeping. Plaintiff was well oriented for person, place, time, and situation, and his memory was fair. He exhibited good verbal judgment. Dr. Rexroat opined Plaintiff could understand and remember simple instructions and sustain concentration and persistence with simple tasks. He was able to interact socially and had mild limitation in his ability to adapt to his environment. Plaintiff was also able to clean his house, drive a car, grocery shop, prepare meals, do laundry, watch TV, play video games, listen to music, skateboard, and do mixed martial arts. Thus, Dr. Rexroat found only mild limitations in Plaintiff's activities of daily living due to unemployment. Dr. Rexroat opined Plaintiff had few limitations in the area of social functioning, as he saw friends, spent time with his brothers, and had a girlfriend he saw daily. In addition, Plaintiff could sustain concentration, persistence, and pace with simple tasks. Memory

5

was in the borderline range, which caused moderate limitations. Dr. Rexroat assessed mood disorder NOS, mild; borderline intelligence; and occupational and educational problems. Plaintiff's motivation was good, and his prognosis was fair. (Tr. 1036-1039)

On March 4, 2013, Scott Brandhorst, Psy.D., completed a Mental Residual Functional Capacity Assessment based on the evidence in the record. Dr. Brandhorst found moderate limitations in Plaintiff's ability to understand and remember detailed instructions and his ability to carry out detailed instructions. He opined Plaintiff was not significantly limited in any other areas of functioning. (Tr. 1042-0144)

Dr. Brandhorst also completed a Psychiatric Review Technique form and found Plaintiff had affective disorders, namely mood disorder NOS, mild, under listing 12.04 and mental retardation, namely borderline intelligence, under listing 12.05. Dr. Branhorst opined Plaintiff had mild restrictions of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration. Upon review of the medical evidence, Dr. Brandhorst found Plaintiff demonstrated the ability to work, and while he had a severe impairment, he was able to adjust to other work. Therefore, Dr. Brandhorst concluded a cessation of benefits was appropriate. (Tr. 1045-1055)

James W. Morgan, Ph.D., completed a Psychiatric Review Technique form on March 28, 2013. He opined Plaintiff had borderline intelligence and a mood disorder, mild. Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. A Mental Residual Functional Capacity Assessment showed moderate limitations to understanding, remembering, and carrying out detailed instructions, with no other significant limitations. (Tr. 1057-1070)

6

On July 9, 2013, Plaintiff was seen at Scott City Medical Clinic for complaints of back pain and stress. Plaintiff was diagnosed with depression, anxiety, and stress and prescribed Celexa and Diazapam. (Tr. 1174) Plaintiff presented to SEMO HealthNetwork on February 25, 2014 for complaints of schizophrenia symptoms. The Nurse Practitioner noted Plaintiff's mood was dysthymic and depressed with paranoia. He was assessed with traumatic brain injury, undifferentiated schizophrenia, and seasonal pattern depression. Plaintiff was prescribed Synbyax. On November 27, 2013, he complained of depression and sleep disturbances. He was diagnosed with traumatic brain injury and seasonal pattern depression. The Nurse Practitioner advised counseling and medication compliance. (Tr. 1103-1107)

On January 5, 2015, Shawn Guiling, Ph.D., performed a consultative psychological examination on behalf of Disability Determinations. Plaintiff alleged bipolar disorder, depression, schizophrenia, and anxiety. Dr. Guiling noted Plaintiff was somewhat agitated during the evaluation. He provided some information but often responded he did not know or could not remember. Plaintiff stated he did not like going out in public and became anxious and seized up. He believed his agitation and paranoia stemmed from being hit by a truck when he was 14 and stated he was smarter before the accident. Plaintiff expressed depression over an inability to find a job. He did not experience mood swings unless something angered him. Plaintiff was generally healthy but had problems sleeping. He was anxious after losing his social security. (Tr. 1188-1190)

Mental status examination revealed no suicidal ideation, no obsessions or delusions, a somewhat depressed and agitated mood, and flat affect. Plaintiff's rate of thought processing was well below average, and he demonstrated difficulty remembering information resulting in discontinuation of answering questions because he was embarrassed by his cognitive difficulties.

7

However, Dr. Guiling had no concerns with Plaintiff's thought content, as his answers made sense in general. Dr. Guiling noted Plaintiff had below average intelligence and fund of knowledge, as well as memory concerns. He was minimally oriented to person, place, time, and situation. Plaintiff did not engage in behavior showing unacceptable judgment and insight. However, his coping mechanism was to escape and stay home. Plaintiff could take care of his finances. Dr. Guiling opined Plaintiff was not likely able to understand and remember most instructions, and he required simpler language which was written down and repeated more than once in order to grasp the concept and follow through with the task. In addition, Plaintiff had poor ability or effort to concentrate and had little persistence in tasks. Plaintiff stated he had no friends and stopped participating in numerous activities because he found no joy or interest in them. Dr. Guiling diagnosed major neurocognitive disorder due to traumatic brain injury; major depressive disorder, single episode, moderate; and social anxiety disorder. Dr. Guiling opined Plaintiff's prognosis was guarded. Dr. Guiling further observed there was hope in the support and safety Plaintiff felt form his fiancée and her children. Dr. Guiling believed Plaintiff could benefit from a discussion about medication and counseling, as well as help in securing basic employment where he completed simple, repetitive tasks that he could feel good about and not be stressed by too many instructions or supervisors. (Tr. 1190-1192)

On January 22, 2015, Linda Skolnick, Psy.D., completed a Psychiatric Review Technique form for the time period April 29, 2014 through April 29, 2015. Dr. Skolnick assessed Plaintiff's impairment under listing 12.02 for organic mental disorders, 12.04 for affective disorders, and 12.06 for anxiety-related disorders. She found Plaintiff had moderate restrictions in activities of daily living and maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation,

each of extended duration. Dr. Skolnick noted Plaintiff took no psychotropic medication and received no psychiatric treatment or counseling for his mental impairment. He was able to watch his fiancée's children, as well as cook simple meals, drive, pay bills, and watch TV. Dr. Skolnick opined Plaintiff retained the ability to perform and sustain simple tasks away from the public. However, she also found Plaintiff would not be able to maintain social functioning on a sustained basis. (Tr. 163-66)

Dr. Skolnick also completed a Mental Residual Functional Capacity Assessment for the same time period. She opined Plaintiff was moderately limited in several areas of understanding and memory, sustaining concentration and persistence, interacting socially, and adapting. He had marked limitations in his ability to carry out detailed instructions and complete a normal workday without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Skolnick thus determined Plaintiff was disabled with an onset date of August 4, 2014. (Tr. 166-69)

## III. Discussion

### A. Legal Standard

The Social Security Act defines a disabled person as an individual that is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, an individual must show that his physical or mental impairment(s) "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

9

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Where an individual has been granted disability benefits, her continued entitlement to such benefits must be reviewed periodically. 20 C.F.R. §§ 404.1594(a), 416.994(a). "The Commissioner may terminate benefits to a person previously adjudged to be disabled upon substantial evidence that the individual's condition has improved." *Bennett v. Colvin*, 174 F. Supp. 3d 1031, 1037 (E.D. Mo. 2016). "When benefits have been denied based on a determination that a claimant's disability has ceased, the issue is whether the claimant's medical impairments have improved to the point where [s]he is able to perform substantial gainful activity." *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008) (citing 42 U.S.C. § 423(f)(1)). "This 'medical improvement' standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits." *Id.*

The continuing disability review process involves a sequential analysis of up to eight steps for the Commissioner to determine. These steps include: (1) for a Title II claim, whether the claimant is engaging in substantial gainful activity; (2) for both Title II and Title XVI claims, whether the claimant has an impairment or combination thereof that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) whether there has been medical improvement as defined as any decrease in the medical severity of the impairment(s) based on improvement in the symptoms, signs and/or laboratory findings; (4) whether the medical improvement is related to the ability to work, which results in an increase in the claimant's ability to perform basic work activities; (5) whether an exception to medical

10

improvement applies; (6) whether all the claimant's current impairments in combination are severe; (7) if the impairment(s) is severe, whether the claimant has the residual functional capacity based on all current impairments to perform past relevant work; (8) if unable to do past work, whether the claimant can do other work given the residual functional capacity assessment, age, education, and past work experience. 20 C.F.R. §§ 404.1594(f)(1)-(8), 416.994(b)(5)(i)-(vii).

The Court will affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Id.* "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

## B. The ALJ's Determination

In a decision dated July 28, 2017, the ALJ followed the eight-step evaluation process for the Title II claim and the seven-step evaluation process for the Title XVI claim for determining whether a claimant continues to be disabled under 20 C.F.R. §§ 404.1594 and 416.994. The ALJ found the most recent favorable medical decision finding Plaintiff disabled was dated March 27, 2006 and was the comparison point decision ("CPD"). At the time of the CPD Plaintiff's medically determinable impairments were mood disorder, mild mental retardation, residuals of a

11

motor vehicle accident, and history of possible traumatic brain injury. The impairments met the listing for affective disorders, 12.04. The ALJ found as of March 15, 2013, the date Plaintiff's disability ended, Plaintiff had not engaged in any substantial gainful activity. (Tr. 13-16)

Further, the medical evidence established that, as of March 15, 2013, Plaintiff's medically determinable impairments included major neurocognitive disorder due to traumatic brain injury; social anxiety disorder; major depressive disorder, single episode, moderate; borderline intelligence, and schizoaffective disorder. However, since March 15, 2013, Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart A, Appendix 1. The ALJ relied on medical evidence in the record to determine Plaintiff had mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations with regard to concentrating, persisting, or maintaining pace; and no limitations in adapting or managing oneself. The ALJ further found medical improvement occurred as of March 15, 2013, and this improvement was related to the ability to work because Plaintiff's CPD impairments no longer met the same listing that was met at the time of the CPD. (Tr. 16-21)

While Plaintiff continued to have severe impairments, the ALJ determined that, beginning on March 15, 2013, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant can perform simple, routine, and repetitive tasks, with no fast-paced quota requirements, such as an assembly line. The claimant can make simple, work related decisions, and can tolerate occasional changes in the work routine. The claimant can have brief, superficial contact with the public, such as greetings and directions, and occasional interaction with co-workers and supervisors. The claimant cannot perform tandem tasks.

(Tr. 21) The ALJ considered Plaintiff's symptoms and the extent the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence as

required by the regulations. The ALJ also considered opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927, as well as SSRs 96-2p, 96-5p, 96-6p, and 06-3p. Specifically, the ALJ assessed the consultative examinations by Dr. Rexroat and Dr. Guiling. She also considered the opinions of the State agency consultants. (Tr. 21-26)

The ALJ determined Plaintiff had no past relevant work. Based on his younger age, limited education, work experience and RFC based on current impairments, the ALJ found Plaintiff had been able to perform a number of jobs in the national economy. These jobs included table busser, laundry worker, and dietary aide. Thus, the ALJ concluded Plaintiff's disability ended on March 15, 2013, and he had not become disabled again since that date. (Tr. 26-28)

## C. Analysis of the Issue Presented

In his brief in support of the complaint, Plaintiff argues the ALJ erred in failing to give proper weight to the opinion of Plaintiff's consultative examining physician, Dr. Shawn Guiling. Thus, Plaintiff asserts substantial evidence based on the record as a whole does not support the ALJ's determination that Plaintiff's disability ended March 15, 2013, and he was able to perform work existing in significant numbers in the national economy. The Defendant contends substantial evidence in the record supports the ALJ's determination that Plaintiff retained the RFC to perform a range of simple work.

A claimant's RFC is the most he can do, despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.

13

2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, some medical evidence must support the ALJ's RFC determination. *Hutsell v. Massanari*, 259 F.3d 707, 711-12 (8th Cir. 2001). However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946).

Here, Plaintiff claims the ALJ erred in assessing the medical evidence by affording great weight to Dr. Rexroat's opinions and only giving partial weight to the opinion of Dr. Guiling. In determining whether a claimant is disabled, medical opinions are considered by the ALJ together with the rest of the relevant evidence received. 20 C.F.R. § 404.1527(b). The amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The ALJ may reject the conclusions of a medical expert if they are inconsistent with the record as a whole. *Id.* The Court notes a "[a] single evaluation by a nontreating psychologist is generally not entitled to controlling weight." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) (citation omitted). Moreover, an "ALJ is not required to accept every opinion given by a consultative examiner, however, but must weigh all the evidence in the record." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).

14

The Court finds the ALJ thoroughly assessed the medical evidence and determined Dr. Rexroat's findings that Plaintiff could perform simple work tasks was consistent with Dr. Rexroat's observations and testing results, Plaintiff's subjective reports during the examination, and Plaintiff's function reports. (Tr. 24) Dr. Rexroat observed Plaintiff's mental status examination to be normal, and he noted Plaintiff was able to interact socially and engaged in a number of activities requiring memory and concentration. (Tr. 1027-1029, 1037-1038) The ALJ found Dr. Rexroat's observations and testing results were consistent with his opinion that Plaintiff could follow simple instructions and sustain concentration and persistence with simple tasks. (Tr. 23)

In addition, the ALJ noted Dr. Rexroat's familiarity with disability programs and their requirements, which is a valid factor in assigning weight to an opinion. *Id; see also* 20 C.F.R. § 404.1527(c)(1) ("the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, . . . , and the extent to which a medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion").

On the other hand, Dr. Guiling's opinion indicated little effort on Plaintiff's part, and the Plaintiff's subjective allegations were inconsistent with the other examinations and evidence of record. *See Turner v. Colvin*, 621 F. App'x 865, 868 (8th Cir. 2015) (the ALJ did not err in discounting a medical opinion and giving greater weight to conflicting opinions that were more consistent with the remainder of the record). The ALJ noted Dr. Guiling's examination occurred after Plaintiff's benefits ceased, and Plaintiff, for the first time, complained of paranoia and an inability to be around people besides his fiancée and her children. (Tr. 24) An ALJ may discount a plaintiff's allegations where evidence indicates that the plaintiff is a malingerer or

15

exaggerating symptoms for financial gain. *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (citation omitted)).

Further, the Court finds the ALJ did not entirely disregard the opinion of Dr. Guiling. The ALJ noted Dr. Guiling's opinion that Plaintiff would benefit from help in securing a job where he could complete a simple and repetitive task and not be stressed by too many instructions or overseers. (Tr. 24, 1192) The RFC determination reflects this opinion in that it limited Plaintiff to simple, routine, repetitive tasks; simple, work-related decisions; brief interaction with the public; and only occasional interaction with co-workers and supervisors. (Tr. 21)

In addition, while Plaintiff argues Dr. Guiling's opinion is more consistent with the record as a whole, the Court notes the opinions of two State agency consultative psychologists found no significant limitations to simple work and only moderate limitations with respect to detailed instructions. (Tr. 1042-43, 1069-70) Both doctors found Plaintiff could perform simple, repetitive tasks. (Tr. 1055, 1067)

While Dr. Skolnick's opinion reflected marked limitations, the ALJ properly afforded the opinion only partial weight, as Plaintiff's activities were inconsistent with Dr. Skolnick's opinions. (Tr. 25) The record shows Plaintiff was able to drive, cook, clean, shop, perform mixed martial arts, visit with friends and family, and skateboard. (Tr. 521, 551, 1028, 1038) An ability to engage in a number of daily activities detracts from Plaintiff's allegations regarding the intensity and persistence of his symptoms. *See, e.g., Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of claimant's subjective statement of symptoms where the claimant took care of her child, drove, fixed simple meals, performed housework, shopped, and handled money); *Goff*, 421 F.3d at 792 (stating that plaintiff was able to vacuum

wash dishes, do laundry, cook, shop, drive, and walk, which was inconsistent with her subjective complaints and diminished the weight given to her testimony). These inconsistencies between subjective complaints and daily living patterns cast doubt on Plaintiff's disability claim. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016).

In sum, the Court finds the ALJ afforded proper weight to the medical opinions of the consultative examiners, giving Dr. Rexroat's opinion greater weight than Dr. Guiling's opinion based upon Dr. Rexroat's consistency with the evidence in the entire record. *Mabry*, 815 F.3d at 391. The ALJ need not rely entirely on a particular doctor's opinion or choose between opinions. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The ALJ properly chose to credit the opinions of other examining and non-examining physicians, "none of which indicated that [Plaintiff] had serious functional restrictions." *Id.* Further, review of the record demonstrates the ALJ properly considered all the medical and nonmedical evidence in determining Plaintiff's RFC. The Court finds the ALJ thoroughly discussed all the evidence of record, addressed the consistency of the evidence in the record when viewed as a whole, and properly assessed Plaintiff's RFC based on the relevant, reliable evidence of record. *Crawford v. Berryhill*, No. 4:18 CV 408 CDP, 2019 WL 1326669, at *5 (E.D. Mo. Mar. 25, 2019).

## IV. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would

have supported a contrary outcome or because another court could have decided the case differently. *Id. See also Buckner*, 646 F.3d at 556; *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set forth above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Plaintiff's disability ended on March 15, 2013. Therefore, the Court finds substantial evidence supports the ALJ's determination, and the Court affirms the decision of the Commissioner. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Joseph Edward Hayes' complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

Dated this 23rd day of September, 2019.

                                              **RONNIE L. WHITE**
                                              **UNITED STATES DISTRICT JUDGE**